# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT GREENEVILLE

| | |
|---|---|
| KATHY CAMPBELL, | Case No. 2:18-cv-41 |
| Plaintiff, | |
| v. | Judge Travis R. McDonough |
| EAST TENNESSEE STATE UNIVERSITY, *et al.*, | Magistrate Judge Cynthia R. Wyrick |
| Defendants. | |

## MEMORANDUM OPINION

Before the Court is Plaintiff Kathy Campbell's motion to alter or amend the Court's order granting Defendant Bright Services' ("Bright") motion for summary judgment. (Doc. 55.) For the following reasons, Campbell's motion will be **DENIED**.

## I. BACKGROUND

On March 18, 2020, the Court entered a memorandum opinion granting Bright's motion for summary judgment on Campbell's claims for unlawful retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Tennessee Human Rights Act ("THRA"). (*See generally* Doc. 52.) In granting Bright's summary-judgment motion, the Court found that Campbell failed to satisfy her burden at the prima facie stage to proffer evidence of a causal connection between her protected activity and the alleged adverse employment action. (*Id.* at 10–14.) Specifically, the Court found that Campbell failed to produce any evidence suggesting that Bright treated other employees who had not engaged in protected activity more favorably in

making its placement decisions.[1]  (*Id*.)

On April 14, 2020, Campbell filed a motion for the Court to alter or amend its order granting Bright's motion for summary judgment pursuant to Rule 59 of the Federal Rules of Civil Procedure.  (Doc. 55.)  On April 28, 2020, Bright responded in opposition to Campbell's motion.  (Doc. 57.)  As part of its response, Bright submitted an additional declaration from Theresa Marcus, Bright's branch and services manager for its office in Bristol, Tennessee, regarding the number of available administrative positions available at The Reese Group, Inc. ("Reese") and Bright's efforts to fill those positions.  (Doc. 58.)  In her declaration, Marcus explains that Della Akers, the director of operations for Bright at the relevant time, took Reese's job order, which initially requested filling two administrative positions—one for data entry, order entries, and reconciliation and one for data and space management.  (*Id*. at 2.)  According to Marcus, Bright placed another applicant in one of those positions "because the other applicant had more diverse employment experience in the private sector and her skills-set was a better fit for the prospective employer."  (*Id*.)  Marcus further avers that, after filling the first position, Reese contacted Bright and cancelled the request for the second position without providing a reason for the cancellation.  (*Id*.)  As a result, Bright filled only one position for Reese, and, according to Marcus, that position was the only position that became available while Campbell's job application was active with Bright.  (*Id*. at 2–3.)

After Bright filed its response brief and Marcus's additional declaration, Campbell moved to conduct limited discovery, arguing that Bright withheld information and documents in discovery and that Marcus's declaration presented new evidence.  (Doc. 59.)  On July 10, 2020,

---

[1] The evidence the Court relied on in making its decision is set forth in its memorandum opinion granting summary judgment (Doc. 52, at 1–7) and will not be repeated here.

United States Magistrate Judge Cynthia Wyrick entered an order denying Campbell's motion for permission to conduct discovery. (Doc. 65.) In her order, Magistrate Judge Wyrick found that, although Bright "disclosed some information later than preferred," it disclosed necessary information early enough that Campbell "should have been fully aware of the key information prior to responding to [Bright's] motion for summary judgment." (*Id*. at 5.) As a result, Magistrate Judge Wyrick concluded that Campbell's motion to reopen discovery was untimely, especially because Campbell waited until an unfavorable ruling on summary judgment to seek additional discovery and because she failed to bring any discovery issues to the Court's attention in a timely manner. (*Id*. at 5–6.)

Campbell's motion for the Court to alter or amend its order granting Bright's motion for summary judgment (Doc. 55) is now ripe for the Court's review.

## II. STANDARD OF LAW

Under Rule 59(e), a court may alter or amend a judgment when there is a clear error of law, newly discovered evidence, or an intervening change in controlling law, as well as to prevent manifest injustice. *ACLU v. McCreary Cnty.*, 607 F.3d 439, 450 (6th Cir. 2010); *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 833–34 (6th Cir. 1999).

## III. ANALYSIS

Campbell's Title VII and THRA retaliation claims are entirely premised on her assertion that Bright did not place her in an administrative position at any of its clients because she engaged in protected activity while working for her previous employer. (*See* Doc. 12, at 17.) Circumstantial evidence of retaliation is evaluated under the burden-shifting framework set forth

3

in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).[2] Under *McDonnell Douglas*, the plaintiff bears the initial burden to establish a prima facie case of retaliation, which requires that she show: (1) she engaged in protected activity; (2) her exercise of protected activity was known by Bright; (3) thereafter, Bright took an action that was materially adverse to her; and (4) a causal connection existed between the protected activity and the materially adverse action. *Jones v. Johanns*, 264 F. App'x 463, 466 (6th Cir. 2007); *Proffitt v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 150 F. App'x 439, 442 (6th Cir. 2005).

In granting summary judgment in favor of Bright, the Court found that Campbell proffered sufficient proof that Bright took an adverse employment action against her to the extent it did not place her in an available administrative position at Reese. (Doc. 52, at 11–12.) The Court, however, found that Campbell failed to meet her burden of proffering evidence that a causal connection existed between her protected activity and Bright's decision not to place her at Reese. (*Id*. at 12–13.) In her motion to alter or amend, Campbell primarily argues that: (1) she suffered other adverse employment actions that support her retaliation claim; and (2) there was sufficient evidence in the record to support the reasonable inference that Bright's failure to place her was causally connected to her protected activity. (*See generally* Doc. 56.)

### A. Adverse Employment Action

Campbell first argues that she suffered several adverse employment actions in addition to Bright's failure to place her in an administrative position at Reese. (*Id*. at 13–18.) As the Court explained in ruling on Bright's motion for summary judgment, to establish that a defendant took

---

[2] In granting Bright's motion for summary judgment, the Court found that Campbell did not proffer direct evidence of retaliation. (Doc. 52, at 9–10.) Campbell's motion to alter or amend does not ask that the Court alter or amend its ruling as to whether she proffered direct evidence of retaliation. (*See* Doc. 56.)

an adverse employment action, a plaintiff must show "that a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). Stated another way, the antiretaliation provision of Title VII prohibits "actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers." *Id*. at 68. Failing to hire a person for a particular position qualifies as an adverse employment action. *See id*. at 60, 67 (holding that adverse employment actions in retaliation cases "extend" beyond "ultimate employment decisions," like "hiring, granting leave, discharging, promoting, and compensating").

Determining whether Bright took other adverse employment actions beyond not placing Campbell in administrative positions at Reese is a slightly more complicated inquiry, further complicated by the nature of Campbell's relationship with Bright. Bright was not, and has never been, Campbell's employer; rather it is a staffing agency that places individuals in positions at its clients and becomes those individuals' employer upon placement. As a result, Campbell's relationship with Bright is more akin to someone seeking a job from a prospective employer. The Court's independent research suggests that Title VII retaliation claims against prospective employers are rare; rather, retaliation claims are typically premised on an employee's allegation that her present or former employer retaliated against her for engaging in protected activity. In such cases, it makes sense to define adverse employment actions more broadly because a current employer's retaliatory conduct may not rise to the level of terminating the employee or failing to promote the employee but may nonetheless have a material impact on the nature of the employee's relationship with his or her employer. *Burlington*, 548 U.S. at 67–68 (noting that refusal to invite an employee to lunch is normally a "nonactionable petty slight" but that

5

excluding an employee from a weekly training lunch that contributes to professional advancement "might well deter a reasonable employee from complaining about discrimination."). That is why the Supreme Court has held that adverse employment actions in the retaliation context include any actions that may dissuade a reasonable worker from making or supporting a charge of discrimination or that deter victims of discrimination from complaining to the EEOC, the courts, and their employers. *Id*. at 67–68. Such considerations, however, are of lesser utility in determining whether a prospective employer has taken an adverse employment action against a prospective employee because the prospective employer does not have the same incentive to deter protected activity, especially when the prospective employee engaged in protected activity while employed elsewhere. While Title VII aims to dissuade all employers from taking actions that would deter a reasonable employee from complaining about discrimination, it is difficult to see how a prospective employer can retaliate against a prospective employee for engaging in protected activity outside of meaningful consideration of the employee as an applicant for an open position and its ultimate hiring decision.

In this case, in opposing summary judgment, Campbell did not identify specific adverse employment actions she claimed Bright took against her except for failing to place her in an open position. (*See* Doc. 46, at 11–17.) While Campbell did identify perceived slights and hostility she experienced in her interactions with Marcus and Bright, she did not argue, factually or legally, that those interactions in isolation constituted adverse employment actions to demonstrate a prima facie case of retaliation. (*See id*.) Rather, Campbell specifically argued that Bright's failure to place her was the adverse employment action she suffered:

> A reasonable jury could certainly find that a placement agency's deceitfully refusing to refer a person because he/she had filed EEOC charges against a prior employer while at the same time deliberately misleading him/her into believing that the placement agency was attempting to refer him/her to a job position would

6
Case 2:18-cv-00041-TRM-CRW   Document 66   Filed 12/03/20   Page 6 of 10   PageID #: 628

deter a reasonable person from pursuing his/her EEOC-related protected rights.

(Doc. 46, at 21.) She further argued that:

> *Any employee being subjected to current Title VII discrimination and considering whether to quit or file EEOC charges would certainly be deterred from objecting about the discrimination or filing EEOC charges over the discrimination if she knew that employment agencies would never recommend or refer him/her to future employment because of those EEOC charges.*

(*Id*. at 23 (emphasis in original).)

The Court concluded that Campbell satisfied her burden at the prima facie stage to demonstrate that Bright took an adverse employment action against her by failing to place her in a position at Reese. (Doc. 52, at 11–12.) This remains true, but Campbell has otherwise failed to demonstrate that the Court erred in finding that this is the only adverse employment action supported by the evidence in the record.

### B. Causal Connection

Having determined that the only adverse employment action Bright arguably took against her was failing to hire her for an open position with Reese, the only question remaining is whether Campbell proffered sufficient evidence to raise the inference that her protected activity was likely the reason for Bright not placing her in a position at Reese. In granting summary judgment in favor of Bright, the Court concluded that Campbell failed to meet her burden of proffering evidence supporting a causal connection between her protected activity and an adverse employment action taken by Bright. (Doc. 52, at 12–14.) In arriving at this conclusion, the Court noted that, in the context of a failure-to-hire retaliation claim, a plaintiff satisfies the causal connection requirement by proffering evidence that she was treated less favorably than similarly situated individuals who did not engage in protected activity. (*Id*.)

In moving to alter or amend, Campbell contends the "comparator" analysis is inappropriate for determining whether a causal connection exists because Marcus never asks

applicants about EEOC activity and Bright does not keep internal documentation about applicant's EEOC activities. (Doc. 56, at 2.) Based on Marcus's averments, Campbell appears to argue that the comparator analysis is inapplicable here because it was impossible for her to know whether the applicant Bright placed ever engaged in protected activity:

> Nothing on the internal Bright documents suggests that the lady had ever filed EEOC charges against any prior employer. ***The applicant might or might not have engaged in prior EEOC activity.*** Under Bright's operating procedures, Manager Marcus was not supposed to know one way or the other whether any applicant has ever filed previous EEOC charges.

(Doc. 56, at 7 (emphasis added).) Campbell's acknowledgement that the applicant Bright placed "might or might not have engaged in prior EEOC activity" demonstrates precisely why she fails to meet her burden as it relates to Bright's decision to place another applicant at one of the Reese positions in April 2017. *See Horn v. City of Cleveland*, 674 F. App'x 511, 519–20 (6th Cir. 2017) (explaining that evidence that an employer treated an employee "differently from similarly situated employees is relevant to causation"); *see also Tomanovich v. City of Indianapolis*, 457 F.3d 656, 668 (7th Cir. 2006) (affirming district court's grant of summary judgment on a plaintiff's retaliation claim because the plaintiff "did not establish that a similarly situated employee who did not engage in statutorily protected activity was treated more favorably"). As the Court previously explained, if the applicant Bright placed engaged in protected activity, then Campbell's protected activity cannot supply the requisite causal connection for Bright's decision not to place her in that position. (Doc. 52, at 13.) Without that information, which Campbell could have obtained in the discovery process,[3] she cannot satisfy her burden of demonstrating

---

[3] Campbell may argue that because Marcus does not ask applicants about EEOC activity and because Bright does not keep documentation about applicant's EEOC activity, she could not know whether the applicant Bright placed ever engaged in protected activity. But that argument ignores that she could have engaged in third-party discovery, including seeking a deposition of the applicant Bright ultimately placed. It also ignores that there is not any deposition testimony from Marcus or any other Bright employee in the record. Campbell could have engaged in

8
Case 2:18-cv-00041-TRM-CRW   Document 66   Filed 12/03/20   Page 8 of 10   PageID #: 630

that her protected activity was likely the reason Bright selected another applicant regardless of how Marcus comported herself in her interactions with Campbell. Viewing the evidence in the light most favorable to Campbell does not require the Court to assume that the applicant Bright placed never engaged in protected activity because there is no evidence about that issue to view in Campbell's favor.[4]

Campbell also failed to meet her burden of proffering evidence sufficient to raise the inference that her protected activity was likely the reason Bright did not place her in the second position Reese asked it to fill in April 2017. At the time Bright moved for summary judgment, there was simply no evidence in the record regarding what happened to the second position after Reese requested that Bright fill it. Campbell wants the Court to infer, based primarily on her interactions with Marcus, that Bright elected not to fill the position at all and that it did so because of her protected activity, but the only evidence in the record at the time Bright moved for summary judgment was that Reese asked Bright to fill two positions. Without evidence in

---

additional discovery aimed at finding out more about the applicant Bright placed at Reese and what Bright knew when it placed the other applicant, but it appears that Campbell elected not to seek that information. Campbell cannot now argue that the absence of information she does not appear to have sought precludes summary judgment.

[4] Even assuming that Campbell had met her burden of demonstrating a causal connection, her retaliation claim would still fail because she did not proffer sufficient evidence suggesting that Bright's legitimate, non-retaliatory reason for selecting the other applicant was pretext for retaliation. In moving for summary judgment, Bright explained that it selected another applicant for this position because the "other applicant had more diverse employment experience in the private sector and her skills set was a better fit for the prospective employer." (Doc. 43, at 29–30.) In opposing summary judgment, Campbell did not provide evidence that this legitimate, non-retaliatory reason for choosing the other applicant had no basis in fact, did not actually motivate Bright to select the other applicant, or was an insufficient basis for Bright to select the other applicant. *See Proffitt*, 150 F. App'x at 442. To the contrary, Campbell specifically averred that she "was not insisting that the lady who Bright Services referred [to Reese] . . . could not perform that particular job." (Doc. 47, at 14.) Rather, she simply believed that she could also perform that job. (*Id*.) As a result, Campbell also failed to satisfy her burden to produce evidence from which a reasonable jury could infer that Bright's non-retaliatory reason for selecting the other applicant was actually pretext for retaliation.

the record regarding what ultimately happened to the second position,[5] it is unreasonable to infer that Bright simply elected to leave the position unfilled indefinitely or that it likely did so because Campbell engaged in protected activity at her prior employer.[6]

It was Campbell's burden at the prima facie stage to produce evidence of a causal connection between her protected activity and an adverse employment action. Campbell failed to satisfy that burden and none of the evidence identified or arguments advanced in her motion to alter or amend compels a contrary decision. Accordingly, the Court will **DENY** Campbell's motion to alter or amend the Court's memorandum opinion granting Bright's motion for summary judgment.

## IV. CONCLUSION

For the reasons stated herein, Campbell's motion to alter or amend (Doc. 55) is **DENIED**.

**AN APPROPRIATE JUDGMENT WILL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**

---

[5] Again, it appears that Campbell failed to obtain information necessary to satisfy her burden at the prima facie stage during discovery.

[6] In responding to Campbell's motion to alter or amend, Bright filed a second declaration from Marcus explaining that Reese cancelled its request to fill the second position. (Doc. 58.) While such evidence provides Bright's explanation as to why it did not select Campbell to fill the position and would have been helpful if provided at the time it moved for summary judgment, the fact that Bright did not provide that explanation until after Campbell moved to alter or amend the Court's judgment has no impact on the Court's conclusion that she failed to meet her burden at the prima facie stage with regard to causal connection.